IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MARIE ZAZUETA, | § § § | |
| Plaintiff, | § § | |
| v. | § § | C.A. NO. 1:25-cv-1559 |
| | § § | |
| JASPER AI, INC. | § § | JURY DEMANDED |
| Defendant. | § § | |

**AMENDED COMPLAINT**

Plaintiff MARIE ZAZUETA ("Plaintiff") complains of JASPER AI, INC. and for her cause of action would show the Court as follows:

**I.**

**INTRODUCTION**

1. This action seeks damages, attorneys' fees, expert fees, taxable costs of the court, pre-judgment and post-judgment interest as a result of civilly wrongful conduct in violation of the laws of the United States, including Title VII of the Civil Rights Act of 1964, as amended, the Pregnant Workers Fairness Act, as amended, and the Texas Commission on Human Rights Act, as amended.

**II.**

**PARTIES**

2. Plaintiff MARIE ZAZUETA is a resident of California.

3.     Defendant JASPER AI, INC. is an entity which may be served with process by serving its registered agent, Cogency Global Inc., at the following address: 1601 Elm Street Suite 4360, Dallas, Texas 75201.

## III.

## JURISDICTION AND VENUE

4.     This is a civil action seeking redress for violation of rights guaranteed to the Plaintiff pursuant to Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), the Pregnant Workers Fairness Act, and the Texas Commission on Human Rights Act in accordance with those statutes' provisions against sex/pregnancy discrimination and retaliation. More specifically, this action seeks monetary damages and all other appropriate relief to which Plaintiff is entitled to under the law on account of discrimination on the basis of sex/pregnancy, including the denial of reasonable accommodations, and retaliation under Title VII, the PWFA, and the TCHRA.

5.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1367.  The Court has supplemental jurisdiction over Ms. Zazueta's claims arising under Texas statutory law under 28 U.S.C. §1367.

6.     This action lies in the United States District Court for the Western District of Texas, Austin Division, pursuant to 28 U.S.C. § 1391(b), as the events giving rise to Plaintiff's claims occurred substantially within this district and division.

## IV.

## CONDITIONS PRECEDENT

7.     All conditions precedent have been performed or have occurred.  Plaintiff exhausted her administrative remedies in this case by filing a Charges of Discrimination with the

U.S. Equal Employment Opportunity Commission and the Texas Workforce Civil Rights Division on October 14, 2024 (addressing the refusal of reasonable accommodations and pregnancy discrimination), and December 16, 2024, within 180 days of her termination on October 28, 2024. Plaintiff received a Right to Sue notice on both charges from the U.S. Equal Opportunity Commission on or after July 1, 2025, and is filing this lawsuit within 90 days of receipt of the Notice.  No notice of right to sue is needed for Ms. Zazueta's claims under the TCHRA.

## V.

### STATEMENT OF FACTS RELEVANT TO ALL CLAIMS

8. Plaintiff, Marie Zazueta, was hired by Defendant Jasper AI, Inc. on January 3, 2023, as a Senior Technical Product Manager.  After two months of employment, Ms. Zazueta was promoted to the position of Staff Technical Product Manager.

9. Ms. Zazueta's performance was been rated well by her managers. In her last performance review, which was for Q1 of 2024, her overall performance rating was "Delivers Effective Results," and her manager had this to say about her performance:

> Marie's strengths lie in her leadership and steadiness as part of our EPD team.  She brings strong best practices and willingness to improve process and coaching to help lift up the teams and projects she's engaged in. I greatly value her willingness to support and improve our foundations as a team and as a Business.
> She leads the way in presenting clear and actionable product work. Ranks highest in terms of quality of documentation and process. She's received feedback from peers and leaders about the quality of her work, and has stepped up to the plate to present confidently to execs and others regarding her work.
> Marie took on the responsibility of overseeing multiple teams during the transition away from underperforming employees in the company. She willingly tackled various challenges and supported these teams in moving towards a more stable environment.

Her peer reviews were similarly complementary. Ms. Zazueta was praised for "thorough documentation to executives", effective handling of the Groups product launch and AI audit log, "some of the most detailed and effective user stories I've ever encountered", "meticulous in communicating with stakeholders", "Marie's skills are not just evident; they are exceptional", and "technical product expertise."

10. In July 2024, Ms. Zazueta notified her supervisor, David Cheng, that she was pregnant. After that, Mr. Cheng's attitude toward Ms. Zazueta changed for the worse. He began excluding Ms. Zazueta from key communications and meetings, and behaved inappropriately and aggressively toward her. Ms. Zazueta became concerned about these behaviors, and reached out to several co-workers to discuss them. As Mr. Cheng's behavior worsened, Ms. Zazueta finally decided to go to HR about him.

11. However, Ms. Zazueta's complaint to HR went unaddressed. Instead of investigating the situation, HR told Ms. Zazueta that she should address her concerns directly to Mr. Cheng's supervisor, Bryan Tsao. She did so, sharing the same concerns with him that she had shared with HR, including about Mr. Cheng's racially and gender-biased behavior, as well as his discrimination against her because of her pregnancy.

12. Rather than address these behaviors, though, Mr. Tsao and Mr. Cheng responded to Ms. Zazueta's concerns by effectively ending her employment. They offered her the option of accepting a performance improvement plan, though they had never shared any concerns about her performance with her, or a severance package. The performance improvement plan that they gave Ms. Zazueta, however, failed to identify any specific areas of work performance that she had failed at, or that needed improvement. It is a generic document, full of false statements about "counseling" that Ms. Zazueta had not actually received.

13. The alternative to accepting the PIP was that Ms. Zazueta was also told she could resign, and that if she did so Jasper would pay her ten weeks of severance pay, but that she would also have to give up all of her legal claims against the company. Mr. Cheng told Ms. Zazueta not to take the PIP option, as it would not end with her remaining at the company at the conclusion of the PIP.

14. Ms. Zazueta refused to resign, and accepted the PIP.

15. After Ms. Zazueta refused to resign, Mr. Cheng became even more confrontational and aggressive towards her. During one of the first meetings where they went over Ms. Zazueta's supposed lack of progress on the PIP, Mr. Cheng's tone was extremely demeaning and hostile, to the extent that Ms. Zazueta had to get HR involved in further PIP meetings. On September 24, 2024, Ms. Zazueta sent the following email to Jasper's HR department regarding Mr. Cheng's behavior in these meetings:

> On Tue, Sep 24, 2024 at 11:00AM Marie Zazueta <marie.zazueta@jasper.ai> wrote:
>
> Hi Bonnie,
>
> Thanks for your email. I will go ahead and request David's consent to record the meetings. While I do need them recorded to be able to keep track of what he says, the other reason I want to be able to record the meetings is that David's tone during our last meeting was highly confrontational and aggressive. Prior to our last 1:1 meeting, he had behaved in similar ways towards me, but his behavior during our last 1:1 took it to another level of highly inappropriate behavior, and this is not something that I'm willing to put up with again.
>
> I also want to reiterate that, a full week into the PIP process, David still has not told me anything that I'm specifically doing wrong. During our last meeting, he was demeaning, aggressive and repeatedly said "I wasn't performing to the level of a Staff-level PM". It was emotion with no content, and it felt like it crossed a line. There was nothing productive about it—it was just David expressing anger.
>
> I also understand from several colleagues that now David has started going to my peers and trying to get documentation that I'm not doing my job, though apparently not successfully, as he has not presented me with any information backing up that idea.
>
> Since David still has not pointed out any actual issues with my work performance, this all really feels like retaliation for me reporting David's discrimination against me. I'm going to keep doing my job, and would like for David to do the same.
>
> Marie

16.     As Mr. Cheng's open hostility toward Ms. Zazueta and the other discriminatory and retaliatory conduct she was facing increased, the mental and physical symptoms Ms. Zazueta was experiencing because of this environment became progressively difficult to manage. Ms. Zazueta's medical providers believed the symptoms she was experiencing were related to her pregnancy and caused by the hostile work environment to which Defendant was subjecting her. On September 30, 2024, Ms. Zazueta requested to take leave under the Family and Medical Leave Act. The correspondence from Ms. Zazueta's medical provider stated:

> Date: 09/30/2024
> RE: Marie Zazueta, DOB: 05/26/1989, PT ID #2578303
>
> To whom it may concern,
>
> Marie Zazueta is a current patient of Dr. Diana Wang at Violet Crown OBGYN. Marie is currently expecting, and her expected delivery date is 01/09/2025. Marie has been experiencing medical issues related to her pregnancy such as hypothyroidism, she is advanced maternal age, low blood pressure, and dizziness. Marie is to start FMLA due to these medical reasons related to her pregnancy. Marie has also been experiencing increased stress, anxiety, panic attacks, loss of appetite, and loss of sleep due to her working environment, which has in turn affected her pregnancy.

17. After Defendant received Ms. Zazueta's request, their HR representative, Bonnie Fujita-Lienert called Ms. Zazueta to inform her that, although Respondent had already granted Ms. Zazueta FMLA time for her maternity leave, the company did not actually offer FMLA.

18. Ms. Fujita-Lienert then sent Ms. Zazueta an email that stated that "I've previously shared with you our ADA Policy and process for reasonable accommodations. We've received your accommodation request form submission for an FMLA leave - please resubmit the request in a new form pursuant to the accommodation act coverage."

19. There was no mention of the opportunity for an accommodation under the Pregnant Workers' Fairness Act, even though both Ms. Zazueta's doctor and Ms. Zazueta had told Ms. Fujita-Lienert that she needed the time off because of symptoms related to her pregnancy.

20. Ms. Zazueta's doctor immediately filled out the new accommodation forms provided by Defendant, and included the note referenced above. Ms. Zazueta's doctor indicated that the symptoms were likely temporary and expected that they would be resolved after she gave birth and ended her maternity leave.

21. However, because of the treatment she was receiving, including Defendant's refusal to allow her reasonable accommodations under the Pregnant Workers' Fairness Act, on October 16, 2024, at 8:11am, Ms. Zazueta notified Defendant that she had filed a Charge of

Discrimination with the EEOC. That afternoon at 2:29pm, Ms. Zazueta received the following e-mail from Ms. Fujita-Lienert that stated as follows:

> *Dear Marie,*
>
> *We received the certification from your medical provider, Diana Y. Wang, MD, FACOG, advising that you will benefit from a continuous leave of absence effective September 30, 2024, through the birth of your child. For the reasons more fully explained below, we are not able to grant or deny your leave request for lack of information sufficient to make that determination.*
>
> *Dr. Wang describes your symptoms as "pregnancy-related disabilities" and states that you are unable to perform the essential functions of your job due to "increased stress, anxiety, panic attacks, and loss of sleep", supposedly caused by your working environment. Dr. Wang, however, provided no indication that your symptoms are attributable to your pregnancy. Further, it is not clear that any of your symptoms are a disability in the sense that they substantially limit your ability to perform a major life activity and/or your ability to perform a specific, essential function of your job. What is more, Dr. Wang does not include a medical diagnosis that explains a relationship between your working environment and the symptoms generally affecting your ability to perform the essential functions of your job. The letter also fails to connect those symptoms to your pregnancy through medical diagnosis.*
>
> *Because of the disconnect between your symptoms and your pregnancy, there is no reason to conclude that they will resolve once you give birth and recover medically from that event. Therefore, Jasper will not approve the medical leave you requested as an accommodation without further explanation and justification. If you believe that your medical provider can provide additional information or clarification that may affect our determination, please provide supplementary documentation in support. Otherwise, <u>**please be prepared to return to work on Monday, October 21, 2024**</u>. If you are unable to reach your provider by that date, please let us know and we can determine if an extension would be appropriate.*
>
> *Lastly, we will temporarily be revoking your access to our systems and network to comply with internal IT guidelines until we have heard back from you on the above. If you have any questions regarding anything from above, please feel free to reach out.*
> *Thank you,*
> *Bonnie*

22.     The following day, on October 17, 2024, Ms. Zazueta's therapist, Casey Davids sent a letter to Ms. Fujita-Lienert responding to her October 16, 2024 email. Ms. Davids' letter addressed each of Ms. Fujita-Lienert's questions, and established conclusively that Ms. Zazueta's

condition qualified her for leave as an accommodation under the Pregnant Workers' Fairness Act.

23. On October 18, Ms. Fujita-Lienert sent Ms. Zazueta another email saying that her request for leave could not be granted, because the company still lacked sufficient information (after her doctor's letter, a letter from her therapist, and her doctor answering all of the questions in the accommodation form). The email stated that Ms. Zazueta's doctors did not:

> 1. attribute[] your symptoms to your pregnancy;
> 2. provide[] evidence that your symptoms rise to the level of a disability by substantially limiting your ability to perform a major life activity;
> 3. claim[] that your ability to perform a spdecifically identified, essential function of your job is impaired; or
> 4. otherwise provide[] a basis to conclude that your symptoms will resolve at the end of your pregnancy.

24. Ms. Zazueta responded to her email later that day as follows:

Hi Bonnie,

Here are my responses to the deficiencies you listed, in bold:

1.	attributes your symptoms to your pregnancy—**the law does not require that the symptoms I have been experiencing are caused by my pregnancy. The EEOC's guidance on the Pregnant Workers' Fairness Act states: "It can be that the employee or applicant needs to take actions for their health or the health of their pregnancy—such as not being around certain chemicals; not working in the heat; or limiting or avoiding certain physical tasks, for example lifting, bending, walking, standing, or running. It can be that the employee needs to attend health care appointments for the pregnancy, childbirth, or related medical condition itself."**
2.	provides evidence that your symptoms rise to the level of a disability by substantially limiting your ability to perform a major life activity.—**A simple google search shows that the PFWA does not require showing of a disability that substantially limits my ability to perform a major life activity. Search result: "The Pregnant Workers Fairness Act (PWFA) does not require an employee to have a substantially limited major life activity to be eligible for a reasonable accommodation. Instead, the PWFA defines "limitations" as physical or mental conditions related to pregnancy, childbirth, or related medical conditions. The PWFA allows for modest, minor, or episodic limitations."**
3.	claims that your ability to perform a specifically identified, essential function of your job is impaired—**The EEOC guidance on the Pregnant Workers' Fairness Act states: "Leave can be a reasonable accommodation that an employee requests under the PWFA." As you can see from the note**

**that Ms. Davids already provided, she is not claiming that there is a "specifically identified, essential function" of my job that is impaired. She is simply recommending a leave of absence because of how the work environment has affected me medically. That is exactly what the EEOC guidance is talking about when it states that a limitation "can be that the employee or applicant needs to take actions for their health or the health of their pregnancy."**

4. otherwise provides a basis to conclude that your symptoms will resolve at the end of your pregnancy.—**I have asked Ms. Davids to provide her opinion about that.** [despite the fact that my doctor had long ago addressed the issue in the accommodation form]

25. On October 21, 2024, Ms. Zazueta sent Defendant another letter from Casey Davids answering the fourth question in Ms. Fujita-Lienert's email.

26. On October 24, Ms. Fujita-Lienert sent Ms. Zazueta another email, again shifting the target for assessing her request for leave as an accommodation under the PWFA. The email said:

> From: **Bonnie Fujita-Lienert** <bonnie.fujita-lienert@jasper.ai>
> Date: Thu, Oct 24, 2024 at 1:25 PM
> Subject: Re: Letter from Casey Davids & Medical Leave of Absence Request
> To: Marie <marie.zazueta@gmail.com>
> Cc: Alex Buder Shapiro <ashapiro@jasper.ai>
>
> Hi Marie,
>
> We've received a second letter from Casey Davids, M.Ed., LPC dated October 21, 2024. In this letter, Davids explains that you are under her care for work-related anxiety and its impact on your pregnancy. The letter goes on to assert that the positive effects of maternal bonding will reduce your work-related anxiety.
>
> Once again, this letter does not provide sufficient information to grant or deny your request for an extended medical leave of absence. To be clear, the deficiencies identified in previous correspondence have not been resolved.
>
> Specifically, the letter from Casey Davids is deficient in that:
>
> 1. the underlying medical condition identified therein, and which allegedly necessitates an extended medical leave of absence, is specifically related to your work and not your pregnancy;

> 2. it does not provide any information regarding how any medical condition, whether related to your pregnancy or not, impairs your ability to work;
> 3. it does not identify how the impact of work-related stress on your pregnancy is significantly impairing your ability to perform your job duties or otherwise explain how and why an extended leave of absence is the only reasonable accommodation available;
> 4. it does not provide an individualized basis to conclude that stress related to your work environment will be alleviated by a general sense of wellbeing following child birth.
>
> As before, we need additional documentation from your healthcare provider to inform our decision to grant or deny your request for medical leave for the duration of your pregnancy and through the period during which you medically recover from childbirth.
>
> Please submit the requested information as soon as possible. If we do not receive the necessary documentation by this date, you will be expected to return to work on **Monday, October 28, 2024. No further exceptions or extensions will be granted.** If you do not provide the necessary information or report for work on or before this date, we will interpret that action as an indication that you wish to voluntarily resign your employment and will act accordingly.
>
> We appreciate your prompt attention to this matter and are committed to working with you to address your accommodation needs.
>
> Sincerely,
> Bonnie

27. Accordingly, Ms. Zazueta sent Ms. Fujita-Lienert the following email responding to her email from October 24:

> From: **Marie** <marie.zazueta@gmail.com>
> Date: Fri, Oct 25, 2024 at 4:45 PM
> Subject: Re: Letter from Casey Davids & Medical Leave of Absence Request
> To: Bonnie Fujita-Lienert <bonnie.fujita-lienert@jasper.ai>
> Cc: Alex Buder Shapiro <ashapiro@jasper.ai>
>
> Hi Bonnie,
>
> I think it's time to stop the back and forth about this—these emails are obviously just more harassment because of my complaints of pregnancy discrimination. My medical providers have answered all

> of the questions you asked in your previous emails, so you now have all of the necessary information to assess my leave request under the Pregnant Workers' Fairness Act.
>
> I intend to follow my doctor's orders and to remain off work until I am released. I am not resigning my position with Jasper.
>
> When David Cheng told me not to take the PIP option because it would not end with me remaining at the company, I guess he meant it.
>
> I thought Jasper was better than this. I guess I was wrong. 1 in 5 women experience pregnancy discrimination at work (https://bipartisanpolicy.org/blog/bpc-morning-consult-pregnancy-discrimination/) so at least I'm not alone. Just really disappointed.
>
> Thanks.
> Marie

28. Defendant terminated Ms. Zazueta's employment the next working day, October 28, 2024. In the termination email, Respondent told Ms. Zazueta that it was accepting her "voluntary resignation." However, Ms. Zazueta had not resigned.

## VI.
## CAUSES OF ACTION

**COUNT ONE - DISCRIMINATION AND RETALIATION UNDER TITLE VII**

29. Plaintiff filed a charge of discrimination against Defendant with the United States Equal Employment Opportunity Commission (EEOC) on December 16, 2024, within 300 days of her termination on October 28, 2024. Plaintiff received a notice of the right to sue from the EEOC dated July 1, 2025, which is within 90 days of the filing of this Complaint.

30. Plaintiff was an employee within the meaning of Title VII and belongs to a class protected under the statute, namely Plaintiff was discriminated against because of her pregnancy and retaliated against for opposing pregnancy discrimination in violation of the Pregnancy Discrimination Act (a part of Title VII of the Civil Rights Act of 1964, as amended).

31. Defendant is an employer within the meaning of Title VII.

32. Title VII of the Civil Rights Act of 1964 states, in pertinent part, that, "(a) It shall be an unlawful employment practice for an employer (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

33. Title VII of the Civil Rights Act of 1964 further states that "[t]he terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes." 42 U.S.C. § 2000e(k).

34. Defendant intentionally discriminated against Plaintiff because of her pregnancy and gender (female) in violation of Title VII by subjecting Plaintiff to the events described above. Defendant's decisions were motivated by Plaintiff's gender/pregnancy, and by Plaintiff's opposition to Defendant's discriminatory conduct. Plaintiff made a discrimination complaint and opposed a discriminatory practice by Defendant, and suffered adverse employment actions as a result. The unlawful practices committed by Defendant were and are a direct cause of Plaintiff's damages, as more fully set forth below.

**COUNT TWO - DISCRIMINATION AND RETALIATION UNDER THE TEXAS COMMISSION ON HUMAN RIGHTS ACT**

35. <u>Discrimination.</u> The conduct of the Defendant towards Plaintiff, through its agents, employees, managers, and supervisors, as set forth above, among other activities

constitutes discrimination on the basis of gender, in direct violation of §21.001, et. seq., Labor Code, Vernon's Texas Codes Annotated, which states, in pertinent part, that:

> An employer commits an unlawful employment practice if...the employer...discriminates against an individual...or...classifies an employee...in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any manner the status of an employee.

36. Plaintiff's gender (including gender identity) was a determining or motivating factor in Defendant's employment decisions regarding Plaintiff as described above, including the decision to subject Plaintiff's to disparate terms and conditions of his employment and to terminate Plaintiff's employment. Plaintiff's gender moved Defendant toward its decision or was a factor that played a part in Defendant's employment decisions as to Plaintiff.

37. <u>Retaliation.</u> In addition, Defendant retaliated against Plaintiff for making discrimination complaints, for participating in a discrimination investigation or otherwise opposing gender discrimination by the employer. See Texas Labor Code §21.055. Plaintiff's discrimination complaints were a determining or motivating factor in Defendant's employment decisions regarding Plaintiff, as described above, including the decision to terminate Plaintiff's employment.

**COUNT THREE - VIOLATION OF THE PREGNANT WORKERS' FAIRNESS ACT**

38. Under the Pregnant Workers' Fairness Act, 42 U.S.C. 2000gg, it is unlawful for an employer to:

> (1) not make reasonable accommodations to the known limitations related to the pregnancy, childbirth, or related medical conditions of a qualified employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity;
>
> (2) require a qualified employee affected by pregnancy, childbirth, or related medical conditions to accept an accommodation other

than any reasonable accommodation arrived at through the interactive process referred to in section 5(7);

(3) deny employment opportunities to a qualified employee if such denial is based on the need of the covered entity to make reasonable accommodations to the known limitations related to the pregnancy, childbirth, or related medical conditions of a qualified employee;

(4) require a qualified employee to take leave, whether paid or unpaid, if another reasonable accommodation can be provided to the known limitations related to the pregnancy, childbirth, or related medical conditions of a qualified employee; or

(5) take adverse action in terms, conditions, or privileges of employment against a qualified employee on account of the employee requesting or using a reasonable accommodation to the known limitations related to the pregnancy, childbirth, or related medical conditions of the employee.

39. The conduct of Defendant described above, including refusing Plaintiff reasonable accommodations under the PWFA and terminating Plaintiff's employment, violates the PWFA, and was a cause of Plaintiff's damages, as further set forth below.

## VII.

## DAMAGES

40. As a result of Defendant's unlawful conduct, Plaintiff has suffered economic and actual damages, including past and future lost income, back wages, interest on back pay and front pay, future wages or front pay, lost earnings in the past and future, lost benefits under the contract or employment relationship, employment benefits in the past, and employment benefits in the future.

41. Defendant intentionally engaged in an unlawful employment practice by discriminating against Plaintiff. Plaintiff additionally brings suit for compensatory damages, including emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, injury to professional standing, injury to character and reputation, and other pecuniary and non-pecuniary losses.

42. The conduct committed by Defendant against Plaintiff is the type of conduct demonstrating malice or reckless indifference to the rights of the Plaintiff. Therefore, Plaintiff additionally brings suit for punitive damages.

## VIII.

## ATTORNEYS' FEES AND EXPERT FEES

43. A prevailing party may recover reasonable attorneys' and experts' fees under Title VII of the Civil Rights Act of 1964. Plaintiff seeks all reasonable and necessary attorneys' fees in this case from Defendant, including preparation and trial of this lawsuit, post-trial, pre-appeal legal services, and any appeals. Plaintiff additionally brings suit for expert fees and all costs associated with the prosecution of this action.

## IX.

## JURY DEMAND

44. Plaintiff demands a trial by jury of all the issues and facts in this case and tenders herewith the requisite jury fee.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that:

1. The Court assume jurisdiction of this cause;

  2. The Court award Plaintiff damages as specified above;

  3. The Court award Plaintiff reinstatement or, in the alternative, front pay.

  4. The Court award Plaintiff's reasonable attorneys' and expert fees and costs;

  5. The Court award Plaintiff pre- and post-judgment interest at the highest rates allowed.

Plaintiff further prays for any such other relief as the Court may find proper, whether at law or in equity.

      Respectfully submitted,

      THE LAW OFFICES OF KELL A. SIMON
      501 North IH-35, Suite 111
      Austin, Texas 78702
      (512) 898-9662 Telephone
      (512) 368-9144 Facsimile


      /s/ Kell A. Simon
      Kell A. Simon
      State Bar No. 24060888
      ATTORNEY FOR PLAINTIFF